Cbria, per
Johnson, J.
That part of the decree to which the first of the complainants’ objections apply, is not so explicit as to be distinctly understood and in remarking on it I wish to be understood as stating what is the law of the case, rather than as correcting any supposed error in the decree. The former court of appeals by their decree have limited the liability of Dr. *Houseal to account for the hire of the negroes to the time of his marriage in 1815, and as between himself and the complainants that decree is conclusive. It is true that the court founds its opinion on the ground, that the hire accruing anterior to that time was exclusively the debt of the wife, for which the husband was not liable after her death; but I incline to think, that if even she herself, or her legal representatives had been a party, it might well be questioned whether she was bound under the circumstances, to render any account of the hire anterior to notice of the complainants claim, or, at any rate, that the statute of limitations would have operated as a bar to all that had accrued more than four years before the filing of the bill. It will be recollected, that it was unknown to the widow of Major Phcelon, (so far as appears to the court) that there was any person entitled to take a distributive share of the estate. She took possession under a will, *585 which, in the opinion of a very respectable minority of the court, entitled her to the whole. Her subsequent husband Dr. Houseal, acted under the same impression, and used the property as his own ; and after a lapse of ten years he is surprised into an account by an unexpected claim. Now, I would put it to the conscience of any intelligent man, and ask whether it would not be ruinous to ninety-nine slave-holders out of a hundred employing and using them as their own, if they were bound to account for their hire at the rate established by the long standing rule of the court. This vierv of the court might, I think, have been maintained on principle and authority. Dormer v. Fortescue, 3 Atk. 130. Green v. Biddle, 8 Wheaton 1. But it is sufficient that the whole question is concluded by the former decree of the court of appeals. The defendant Perman was not, as executor to Houseal, liable to account for hire further back than 1815. There is no one now before* the court representing Mrs. Phselon but himself as executor of Houseal, who for the purposes of this case must be regarded as executor in his own wrong, both of the estate of Major Phselon and his own wife; Barksdale having, as will be noticed hereafter, no interest in this matter.
There can be, it appers to me, no difficulty with respect to the complainants’ second objection. Under the act of 1791, the widow of Major Phselon was entitled to one half of the property of which he died intestate, to one-half of which on her death her husband became entitled, as a distributee, and her next of kin to the other half. She and her subsequent husband had the possession and use of the property ; and the latter has disposed of a part, including the money which was discovered; and on the principles of the decree, his estate is bound to account for negro hire. Now it follows as a necessary consequence, that in the partition of this estate, so much as has been appropriated to the use of either exclusively, whether it consisted of money, of the hire of negroes, or of property sold and converted into cash, must be charged to them as so much received on account of their interest in the estate; and the specific property or its proceeds in the hands of the executor, must be so divided, that the complainants may recover an amount of this fund equal to that to which the widow is entitled, including the amount converted to their own use; or, in other words, the complainants must be first paid the amount received and disposed of by Dr. Houseal, or his wife, and then the balance, if anjr must be divided between them. If the specific property or the proceeds in hand are insufficient for this purpose, of course the complainants would, for this balance, stand in relation of a general creditor to his estate.
As to the grounds of the defendant Perman :
There is certainly nothing in his first ground, if it is *correctly understood. The money found and received by Dr. Houseal is as much a part of the estate of Major Phaelon as any other property of which he died possessed, and the rights of the complainants and the liability of the defendant in relation to it, stand precisely on the same footing.
On the second ground the court concur with the chancellor for the reasons given. Mrs. Houseal was entitled to the estate of her husband, Major Phfelon, jointly with the complainants; no partition or *586 severance had been made of their interest during her life. The marital rights, therefore, could not attach except so far as to entitle him to a distribution with her next kin under the act of 1791. The case ex parte Elms has always been regarded as decisive of this question. The defendant Barksdale was, therefore, entitled to one moiety of the interest which she had in the estate of her husband Major Phselon at the time of her death. Most of the objections which have been raised on the part of the defendant Barksdale have been disposed of by the principles before laid down. Under the existing state of things no account can be taken of the hire of negroes prior to 1815, consequently he can have no interest in it, nor can his dividend of the estate of Mrs. Houseal be charged with the payment of it, and his claim must stand in relation to creditors of Dr. Houseal precisely on the same footing as that of the complainants. If, after taking out the distributive share of the complainants, anything of the specific property or its proceeds remains in the hands of the defendant Perman, as executor of Dr. Houseal, he will, with respect to this fund, be entitled to a precedence over the general creditors; if not, he must stand in the same situation with them. All the other objections of this defendant relate to the money found. He contends that this should be accounted for as part of the estate of Mrs. Pbtelon, and that he is entitled to a distribution *of it. That, at any rate, it should be set down as a payment pro tanto of the distributive share of Dr. Houseal, in the estate of his wife, and that the complainants, so far as regards this fund, should stand in the relation of a general creditor of the estate of Dr. Houseal.
The whole of these objections may be embraced in a single view.
This defendant claims as next of kin to Mrs. Houseal, an equal dividend of the property to which she was entitled at the time of her death, with her husband Dr. Houseal, and which did not vest in him by virtue of the marriage. The value of the property so claimed to be divided must be ascertained, and how much she was entitled to at that time, in the estate of her deceased husband, Major Phtelon ; for the claim is confined to that fund alone. During her life she had a right to dispose of her interest in that estate as she pleased, and having ascertained to how much she was entitled at the death of Major Phaelon, it will be perceived that the inquiry would necessarily arise as to the quantity which had been disposed of by herself or her husband, for, in this way alone can the precise, amount to -which she was entitled at her death be ascertained. Among other things the cash received is wanting, and had been disposed of by the husband, and of necessity this defendant can have no interest in it. To conclude, the defendant Barksdale is entitled to distribution only of so much of the specific property of Major Phtelon, or the proceeds thereof in the hands of defendant Perman as remained at the death of Mrs. Houseal, his widovv, after a partition made with the complainants on the principles above laid down. It is therefore ordered and decreed, that an account be taken before the commissioner, conformably to this modification of this decree of the circuit court.

Decree modified.